482 F.2d 87
 13 UCC Rep.Serv. 78
 NATIONAL HEATER COMPANY, INC., a Division of Rheem
Manufacturing Company, a corporation, Appellant,
v.
CORRIGAN COMPANY MECHANICAL CONTRACTORS, INC., a
corporation, Appellee.
 No. 72-1705.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 14, 1973.
Decided Aug. 15, 1973.
 
 P. Terence Crebs, St. Louis, Mo., for appellant.
 Norris H. Allen, St. Louis, Mo., for appellee.
 Before MEHAFFY, Chief Judge, MATTHES, Senior Circuit Judge, and STEPHENSON, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 This diversity action springs from a contract dispute between two subcontractors. Appellant-seller (National Heater) brought the action in the United States District Court for the Eastern District of Missouri to recover the balance allegedly due on a purchase contract for certain heaters. Corrigan Company, the buyer, counterclaimed. The trial court judgment was in favor of Corrigan on its counterclaim. Judge Regan found that harm to appellee Corrigan totaled $63,291.04 as a result of damage in transit, late delivery, and work done by Corrigan to conform the goods to contract specifications. On appeal the master issue raised by appellant is that the risk of loss for goods in transit should not have been attributed to it.
 
 
 2
 On March 1, 1969 National Heater made a proposal "to the trade" concerning the price of certain heating units to be used in construction at the Chrysler automobile plant in Fenton, Missouri. The proposal priced the merchandise F.O.B. St. Paul, Minnesota "with freight allowed." Based in part upon National Heater's proposal, Corrigan made its bid on the construction job and was awarded the contract. Thereafter, appellant received appellee's purchase order listing "Price $275,640-Delivered." Appellant then mailed to appellee an "Acknowledgment of Purchase Order" bearing the printed words "Sale Price Total" followed by this typed language: "$275,640.00 Total Delivered to Rail Siding." Expressly made a part of this acknowledgment was the condition that "delivery of equipment hereunder shall be made f.o.b. point of shipment unless otherwise stated." The trial court determined that the parties had by these writings contracted for appellant to deliver the goods to the construction site and that the attendant risk of loss in transit therefore was appellant's burden. The court states:
 
 
 3
 "[t]he statement on the face of the acknowledgment which obligated plaintiff to deliver the merchandise 'to rail siding' comes clearly within the 'otherwise stated' provision of the condition. The manifest intention of the parties, in view of their entire course of conduct, was that delivery was to be made not F.O.B. point of shipment but to the rail siding on the job."
 
 
 4
 We agree. To hold otherwise would contradict the writing. We must give effect to the intention of the parties as expressed in the unequivocal language employed. Slotkin v. Willmering, 464 F.2d 418 (CA8 1972); Miravalle Supply Company v. El Campo Rice Milling Co., 181 F.2d 679, 683 (CA8 1950).
 
 
 5
 Several circumstances surrounding this contract further convince us that the trial court was correct. Both litigants agree that the Uniform Commercial Code having been adopted in Minnesota and Missouri prior to the formation of this contract, should apply to this law suit. The Code provides that evidence relating to course of performance between the parties is relevant in determining the meaning of the agreement. Uniform Commerical Code Sec. 2-208.
 
 
 6
 Appellant argues that the term "delivered" in appellee's purchase order and the term "delivered to rail siding" in the acknowledgment referred only to price.[1] As heretofore mentioned the original proposal to the trade made by appellant had previously established that freight would be allowed. Yet both parties typed in the provisions concerning delivery on their forms. In addition appellant made no protest about the "delivered" term in a letter he sent to appellee accompanying the acknowledgment. He did take exception to another provision of the purchase order concerning a ten percent retainage by the buyer pending acceptance. It seems to us as it did to the trial court that the parties were contemplating where delivery would take place rather than price.[2]
 
 
 7
 When a contract is partly written or typewritten and partly printed any conflict between the printed portion and the written or typewritten portion will be resolved in favor of the latter. Miravalle Supply Co., supra, at 683. Appellant's form acknowledgment accepted the purchase order "subject to the conditions of sale and trade customs set forth on the reverse side." Condition 7 on the back of the acknowledgment provided that "all risk of loss or damage following delivery to point of shipment shall be borne by the purchaser." If any ambiguity in fact exists between this condition and the typed provision "delivered to rail siding" the conflict should be resolved in favor of the typewriting. Miravalle, supra. It is also true that any ambiguity in the acknowledgment must be construed against appellant since it drafted the document. Slotkin v. Willmering, supra, 464 F.2d at 422. We conclude that the parties by their written documents agreed that appellant was to deliver the goods to the job site.
 
 
 8
 Appellant also contends that the decision below is infirm because it is partially premised upon the conclusion that appellant in filing the damage claim against the carrier recognized an obligation to do so. Appellant points out that it filed the damage claim only because appellee refused and therefore that action cannot be construed as a recognition by appellant that it was the party obligated to file any damage claims.
 
 
 9
 We are satisfied for the reasons previously set out that the written correspondence clearly demonstrates that appellant agreed to deliver the goods to the railroad siding at Fenton, Missouri. For that reason, the conduct of the parties with respect to the claims against the carrier is not determinative.
 
 
 10
 We note one further significant circumstance lending support to the findings of the trial court. National Heater in paragraph 5 of its complaint had this to say:
 
 
 11
 "5. That thereafter, plaintiff, as directed by defendant, delivered all said merchandise to said Chrysler plant . . ."
 
 
 12
 This allegation of plaintiff's complaint with which no issue was taken should be assumed to be a fact. Tomlinson v. Smith, 128 F.2d 808 (CA 7 1942).
 
 
 13
 In reaching our result we are not unmindful that the F.O.B. term usually indicates the point at which delivery is to be made and will normally determine risk of loss. Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550, 556-558 (D.C.Conn.1968). We also note that the "destination" type contract which we envision this to be is the variant rather than the norm. Uniform Commercial Code Sec. 2-503 Comment 5; W. Hawkland, Sales and Bulk Sales at 58 and 94 (2d Ed. 1958). The provisions of the Uniform Commercial Code may nevertheless be varied by agreement. Uniform Commercial Code Sec. 1-102 and Comment 3. The written documents persuade us that National Heater specifically agreed to deliver the goods to their destination.
 
 
 14
 Affirmed.
 
 
 
 [1]
 There is no dispute that the rail siding contemplated was at the Chrysler plant in Fenton, Missouri
 
 
 [2]
 The trial court said:
 ". . . it is clear to us that by employing in the Acknowledgment the words 'delivered to rail siding' plaintiff accepted the change submitted by defendant, its purpose in adding the words 'to rail siding' being simply to clearly express plaintiff's intention that the term 'Delivered' did not encompass removal of the merchandise from the railroad cars and hauling to the place of installation at the Chrysler plant."